**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION**

| | | |
|---|---|---|
| Kristin Langan, A Minor Child by and through her Guardian ad Litem, Martha Langan, as Guardian ad Litem and Individually, | ) ) ) ) ) | |
| Plaintiff, | ) ) | 9:06-cv-03511-CWH |
| vs. | ) ) | |
| Valerie Wilson Travel, Inc., | ) ) | **ORDER** |
| Defendant. | ) ) | |

This matter is before the Court on the defendant Valerie Wilson Travel, Inc.'s motion for summary judgment. This case involves a child, Kristin Langan ("Kristin"), who was bitten by a dog while visiting her mother at work.

**I.    Plaintiff's Allegations**

On December 21, 2003, eight year old Kristin was bitten by Kate Keep's German Shepard, Max, while she was on the premises of Valerie Wilson Travel visiting her mother, Martha Langan ("Martha").[1]  Kristin was giving Max a treat when the dog bit her. The dog caused injuries to Kristin's body, including her nose and cheek, and Kristin was required to undergo multiple reconstructive surgeries. Kate Keep and Martha both worked as independent contractors for Valerie Wilson Travel, Inc. ("Valerie Wilson Travel"). Martha and Kate Keep were both employed by Valerie Wilson Travel at the time of the incident. Martha and Kate Keep

---

[1] Kristin would occasionally visit her mother at the office during the school year. During breaks from school, she would visit more often.

have similar contracts with Valerie Wilson Travel, which provide that Martha and Kate Keep are to book travel on behalf of Valerie Wilson Travel and that Valerie Wilson Travel will provide office space for them. Valerie Wilson Travel retains a portion of the commission that each woman earns.

Kate Keep's written contract with Valerie Wilson Travel had an additional provision providing that Kate Keep's German Shepard was allowed to share her office with her and that if the dog needed to go outside, he would be accompanied by Kate Keep. Pursuant to Section 2(a) of the contract, Max was allowed to be at the office with Kate Keep every day. The typical work day was from 9:00 A.M. until 5:00 P.M. The contract represents that Kate Keep is an independent contractor, yet the plaintiff alleges that this classification is not conclusive as to the exact status of the relationship. This contract was in effect at the time of the incident.

Deposition testimony and various emails establish that the dog was periodically left unattended at the office while Kate Keep was out and that Max was never on a leash and roamed throughout the office, including the main open public space where the receptionist was located, as well as individual offices. Scott Lynch, Valerie Wilson Travel's on-site manager, attempted to control the wanderings of the dog through an email to Mary Ann Four, director of the Hilton Head office, and a conversation with Kate Keep. Scott Lynch wrote an email to Jennifer Wilson-Buttigieg informing her that the dog needed to stay in Kate Keep's office after his wife, Jennifer Lynch, the assistant director of the Hilton Head office, informed him that the dog growled at her and Grace Van Brunt, an associate, when they attempted to get the dog to move out of the way so that they could retrieve a file from the ticket room. See email from Scott Lynch to Jennifer Wilson Buttigieg, January 7, 2002, Docket 51-4.

Prior to the attack, Scott Lynch informed senior management at Valerie Wilson Travel that Kate Keep was not keeping Max in her office as required under her contract and that Max was causing problems with clients and employees. See Scott Lynch deposition page 16, lines 16-25 and page 17, lines 1-15. Jennifer and Scott Lynch met Valerie Wilson and Kimberly Wilson at a restaurant and informed Valerie Wilson that they did not think that it was appropriate for the dog to be in the office and that the dog had been an ongoing problem. See Jennifer Lynch deposition page 12, lines 17-25 and Scott Lynch deposition page 19, lines 17-25. There is also evidence that clients and some fellow employees were intimidated by the dog because of his growling. See email from Scott Lynch to Jennifer Wilson-Buttigieg, March 1, 2003, Docket 51-6. In an email, Scott Lynch acknowledged that he had "a modicum of control" over the dog when he was at the office. See email from Scott Lynch to Jennifer Wilson Buttigieg, March 12, 2003, Docket 51-7.

In addition, there is evidence that Jennifer Lynch had knowledge that the dog had been aggressive towards children and that she had been specifically told not to let her son around the dog. See Jennifer Lynch deposition, page 11, lines 17-25 and page 12, lines 1-16. Jennifer Lynch also testified that she did not allow her relatives' children to approach the dog. See Jennifer Lynch deposition page 12, lines 7-16. Scott Lynch testified that between the time Max started accompanying Kate Keep to work at Valerie Wilson Travel and the date of the attack, Max displayed aggressive behavior towards various individuals on approximately ten different occasions. See Scott Lynch deposition page 25, lines 14-25 and page 26, lines 1-24. Furthermore, there is no evidence that Max's aggressive tendencies towards children were ever communicated to Martha or Kristin.

## II. Procedural History

On November 15, 2006, the plaintiff brought this action against Valerie Wilson Travel alleging negligence under South Carolina Code § 47-3-110 and under premises liability. On December 13, 2006, the defendant removed this action from the Court of Common Pleas, Charleston County, South Carolina to the United States District Court for the District of South Carolina, Charleston Division. On April 21, 2008, the defendant moved for summary judgment. On June 30, 2008, the plaintiff responded in opposition to the motion for summary judgment. On July 14, 2008, the defendant replied to the plaintiff's response to the motion for summary judgment. On July 16, 2008, the Court took the defendant's motion for summary judgment under advisement.

## III. Standard for Deciding a Motion for Summary Judgment

When a party has moved for summary judgment, the judgment sought shall be rendered forthwith if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). To prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact and (2) he is entitled to judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 247, 248 (1986). An issue of such material fact is "genuine" if the evidence so offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257. In determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party. <u>U.S. v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962).

**IV.     Premises Liability**

    A.     Duty Owed to Licensee

The plaintiff alleges a cause of action against Valerie Wilson Travel based on premises liability. South Carolina courts "recognize[ ] four general classifications of persons who come on premises: adult trespassers, invitees, licensees, and children." <u>Sims v. Giles</u>, 343 S.C. 708, 715 (Ct. App. 2001). South Carolina law applies different standards of care depending on the categorization of the person. <u>Id.</u> Generally, the jury determines whether an individual is a licensee, invitee, or trespasser. <u>Nesbitt v. Lewis</u>, 335 S.C. 441, 448 (1999). The plaintiff concedes the fact that Kristin was a licensee and thus remained on the premises of Valerie Wilson Travel lawfully, as was the case in <u>Nesbitt</u>.

A licensee has either the consent of the owner/occupier or some other privilege to visit the premises and is there for her own purpose rather than to benefit the owner/occupier. <u>Hoover v. Broome</u>, 324 S.C. 531, 535 (Ct. App. 1996). Therefore, a licensee can be said to accept the premises as they are and demand no greater safety than his host provides himself. <u>Sims</u>, 343 S.C. at 721. The duty owed to a licensee is something less than a duty of due care. The South Carolina Supreme Court summarized the duty owed to a licensee in <u>Neil v. Byrum</u>:

> A licensee is a person who is privileged to enter upon land by virtue of the possessor's consent. The possessor is under no obligation to exercise care to make the premises safe for his reception, and is under no duty toward him except:
>
> (a) To use reasonable care to discover him and avoid injury to him in carrying on activities upon the land.

> (b) To use reasonable care to warn him of any concealed
> dangerous conditions or activities which are known to the
> possessor, or of any change in the condition of the premises which
> may be dangerous to him, and which he may reasonably be
> expected [not] to discover.

288 S.C. 472, 473 (1986) (quoting from Frankel v. Kurtz, 239 F. Supp. 713, 717 (D.S.C. 1965)). A possessor is under a duty "to use due care only to discover licensees and to warn them of unreasonable risks resulting from those conditions which are known to the owner but which are unknown and not reasonably discoverable by the licensee." F. P. Hubbard & R. L. Felix, *The South Carolina Law of Torts* 115 (3d ed. 2004) (citing Frankel, 269 F. Supp. at 720-21). In this case, the Court must consider whether there is evidence that Valerie Wilson Travel knew of the dangerous condition created by allowing the dog to remain on the premises and whether Martha or Kristin were aware of this danger.

B. Application

The plaintiff asserts that the defendant did not warn her of concealed dangers or activities associated with the presence of Max on the premises. Although the dog was permitted to accompany Kate Keep to work, the dog was supposed to occupy Kate Keep's office but frequently wandered the office unattended. According to the record, Max displayed aggressive tendencies towards persons in the office on ten different occasions. Jennifer Lynch, the assistant manager of the Hilton Head office, purportedly knew that Max was a threat to children and did not let her children or her relatives' children play with the dog. Furthermore, there is deposition testimony of Jennifer and Scott Lynch stating that they informed Valerie Wilson of the New York office that the dog was causing problems in the office. Therefore, the plaintiff asserts that Valerie Wilson Travel had a duty to warn Kristin's mother of the dog's threatening nature prior

to the attack.

Although Kristin was a licensee and had to accept the premises as they were, if Valerie Wilson Travel was aware of the unreasonable risk that the dog presented, it was under a duty to warn either Kristin or her mother of the dangerous nature of the dog or to eliminate the condition on the property, which it should have realized involved an unreasonable risk of harm to the licensee. Therefore, there is an issue of material fact as to whether Valerie Wilson Travel had knowledge of the dog's dangerous propensities and thus was required to warn Kristin or her mother about the unreasonable risk the dog created. Therefore, the Court denies summary judgment as to the common law premises liability cause of action.

### V.     Dog Bite Statute – Liability Based on § 47-3-110

Prior to 1985, the "one free bite" rule in dog bite cases provided that

> domestic animals are not presumed to be dangerous to persons, and before recovery of damages may be had against the owner, the injured party must prove that the particular animal[ ] was of a dangerous, or vicious nature, and that his dangerous propensity was either known, or should have been known to the owner. The negligence that imposes liability upon the owner is the keeping of a dangerous animal with knowledge of its dangerous tendencies, or in the failure to restrain it from injuring persons . . . .

Hossenlopp v. Cannon, 285 S.C. 367, 369 (1985). In Hossenlopp, the South Carolina Supreme Court adopted a quasi-strict liability rule known as the California rule. The Hossenlopp holding was codified in 1986 in South Carolina Code § 47-3-110, which provides:

Liability of owner or person having dog in his care or keeping.

> Whenever any person is bitten or otherwise attacked by a dog while the person is in a public place or is lawfully in a private place, including the property of the owner of the dog or other person having the dog in his care or keeping, the owner of the dog or other person having the dog in his care or keeping is liable for

> the damages suffered by the person bitten or otherwise attacked. For the purposes of this section, a person bitten or otherwise attacked is lawfully in a private place, including the property of the owner of the dog or other person having the dog in his care or keeping, when the person bitten or otherwise attacked is on the property in the performance of any duty imposed upon him by the laws of this State, by the ordinances of any political subdivision of this State, by the laws of the United States of America, including, but not limited to, postal regulations, or when the person bitten or otherwise attacked is on the property upon the invitation, express or implied, of the owner of the property or of any lawful tenant or resident of the property. If a person provokes a dog into attacking him then the owner of the dog is not liable.

Neither the statute nor case law defines "care or keeping" of a dog. Nevertheless, § 47-3-10 and several cases provide some guidance in determining whether a person has a dog in his "care or keeping." Section 47-3-10 states that "[a] dog is deemed to be 'under restraint' if on the premises of its owner or keeper or if accompanied by its owner or keeper and under the physical control of the owner or keeper by means of a leash or other similar restraining devices." The defendant asserts that from this definition of "under restraint," it could be surmised that a person acting as a "keeper" has the dog on his premises and physically controls the dog. Also, Black's Law Dictionary defines the term "keeper" as "[o]ne who has care, custody, or management of something and who usually is legally responsible for it." Black's Law Dictionary 873 (Bryan A. Garner ed., 7th ed., West 1999).

The defendant relies on Nesbitt v. Lewis, 335 S.C. 441 (1999) and Bruce v. Durney to assert that the defendant is not a keeper under § 47-3-110. The plaintiff asserts that neither of these cases applies in the situation at hand because in those cases, neither of the persons found not to be keepers under § 47-3-110 were living or occupying the premises' where the dogs were housed. The Court was initially inclined to rule with the defendant as to the cause of action for

negligence under South Carolina Code § 47-3-110.  In light of the Court's ruling on the common law premises liability cause of action, the Court will refrain from granting summary judgment on the negligence cause of action at this time.  Therefore, the Court denies the defendant's motion for summary judgment.

**AND IT IS SO ORDERED**.

_____
**C. WESTON HOUCK**
**UNITED STATES DISTRICT JUDGE**

July 21, 2008
Charleston, South Carolina